IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JOSE SANCHEZ-REBOLLAR** | § | |
| | § | |
| **V.** | § | **A-16-CV-1298-LY** |
| | § | **(A-14-CR-273-LY)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Jose Sanchez-Rebollar's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 99); the Government's Response to the Movant's Motion to Vacate, Set Aside or Correct Sentence (Dkt. No. 104); Sanchez's Reply to the Government's Response (Dkt. No. 106). The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

**I. GENERAL BACKGROUND**

On September 2, 2014, Jose Sanchez-Rebollar was charged with conspiracy to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. Dkt. No. 25. When he was first arrested, Sanchez requested appointed counsel, and the Court appointed Horatio Aldredge of the Federal Public Defender's office as his counsel. A little more than a month later, Sanchez filed a motion indicating he had retained counsel, and sought to substitute attorneys Thomas C. Fagerberg and Victor Arturo Arana in place of Mr. Aldredge. Dkt. No. 32. The motion was granted on the same date. Dkt. No. 33. Two months after that, pursuant to a plea agreement, Sanchez entered a plea of guilty. Dkt. No.

44. Sanchez was set for sentencing on February 18, 2015. When asked at that hearing if he wished to persist in the guilty plea he made in November, Sanchez stated that he had not reviewed the Presentence Report and wanted a new attorney. Judge Yeakel recessed the sentencing and directed counsel to meet with Sanchez and review the PSR. Sanchez, however, refused to meet with his attorney. His counsel then filed a motion to withdraw, setting out these facts, and that motion was referred to US Magistrate Judge Mark Lane. Judge Lane conducted a hearing on the motion, and ultimately granted the motion, appointing Alfonso Hernandez to represent Sanchez. Dkt. No. 76. The sentencing hearing was continued, and rescheduled for April 23, 2015. Dkt. No. 78. At the sentencing, Sanchez continued to claim he had not had sufficient time to review the PSR, and continued to raise complaints about it. He asked for yet additional time to prepare for sentencing, a request Judge Yeakel denied.

Thus, on that date, the Court sentenced Sanchez to 130 months imprisonment and 4 years supervised release, and ordered him to pay a $100 assessment. Dkt. No. 83. On April 30, 2015, Hernandez filed a notice of appeal, as requested by Sanchez, and then moved to withdraw, and to have appellate counsel appointed. The Court granted that motion, and appointed new counsel for the appeal. Sanchez's appellate counsel filed an *Anders* brief, however, and on December 11, 2015, the Fifth Circuit dismissed the appeal as frivolous. The circuit's judgment and mandate was received by the Court on January 5, 2016.

Sanchez then filed a Motion to Reduce Sentence pursuant to USSC Amendment 782, which was denied. Dkt. No. 97. Finally, Sanchez has filed this Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, challenging his conviction on the basis of alleged ineffective assistance of counsel. Dkt. No. 99.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

As noted, all of Sanchez's claims assert his counsel was ineffective. To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with

3

counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).

### III. ANALYSIS

Sanchez alleges he was denied the effective assistance of counsel. First, he claims attorneys Victor Arana and Thomas Fagerberg failed to file a motion to suppress evidence arguing that the traffic stop was illegal, and the subsequent search of Sanchez's vehicle was illegal. Second, he asserts that attorney Alfonso Hernandez failed to object to the offense level used to determine his guideline range, and failed to file a motion to have the drug evidence retested, which resulted in a higher sentence and violated his Due Process rights.

**A.     Arana and Fagerberg**

Sanchez contends that Arana and Fagerberg were ineffective for failing to move to suppress the evidence found in Sanchez's car because the stop of his vehicle was illegal; and the subsequent search of it was also illegal. The record indicates that his counsel did not file a motion to suppress. "Failure to file a suppression motion does not constitute per se ineffective assistance of counsel."

*United States v. Chavez–Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). Both deficient performance and prejudice must be proven, and failure to prove either is fatal to such a claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995). Where failure to litigate a Fourth Amendment issue is the foundation of an ineffectiveness claim, in addition to proving counsel deficient, to show prejudice the defendant must prove his Fourth Amendment claim was meritorious and there is a reasonable probability the outcome of the case would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Thus, Sanchez must show that (1) trial counsel's decision not to file a motion to suppress was objectively unreasonable in light of the facts and circumstances; and (2) that he suffered prejudice as a result.

A decision of whether or not to file a motion to suppress is a strategic choice of counsel. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). There is a "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Counsel is required "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). Thus, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire [proceeding] with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland*

5

*v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)). Courts must be "careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

### 1. Stop

First, Arana and Fagerberg were not ineffective for failing to file a motion to suppress based on the traffic stop. A traffic stop of a vehicle is analyzed under the framework of *Terry v. Ohio*, 392 U.S. 1 (1968). "An investigative vehicle stop is permissible under *Terry* only when the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005) (internal quotations omitted). To establish reasonable suspicion of criminal activity, "a minimum level of objective justification for the stop must be present," and "[a]n officer's mere hunch or particularized suspicion is not sufficient." *Id.* at 341. "Reasonable suspicion may be based on information provided by a confidential informant, if the information possesses an indicia of reliability." *United States v. Zamora*, 661 F.3d 200, 207 (5th Cir. 2011) (internal quotations omitted). A court considers a number of factors in finding that a tip provides reasonable suspicion, including:

> the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

*Id.* (quoting *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007).

Sanchez argues that he did not commit a traffic infraction, and therefore the stop was illegal. However, Sanchez overlooks the fact that the officer had reasonable suspicion of criminal activity regardless of whether Sanchez committed a traffic infraction. Prior to making the stop, the officers—pursuant to an anonymous tip—had observed Sanchez engage in activity indicative of a

6

drug transaction. Dkt. No. 104-3 at 1–2. Specifically, the officers observed Sanchez pull up to the address provided by the informant, exit his vehicle and enter another vehicle where he remained for several minutes before exiting with a package. Dkt. No. 44 at 8. Sanchez then entered the residence for a short period before leaving and returning to the same vehicle for several minutes and then returning to his own car to drive away. *Id.* The confidential informant identified a location in which a drug transaction was to take place, and the subsequent police surveillance of Sanchez's actions corroborated the tip. This is sufficient to establish reasonable suspicion, which provided the basis for the *Terry* stop. *Cf. United States v. Spears*, 636 F. App'x 893, 899 (5th Cir. 2016) (finding that merely parking at house known for drug activity was not sufficient to establish reasonable suspicion when the defendant did not exit the truck, enter the house, or talk to the owner of the house).

Sanchez additionally challenges the officer's claim that he had reasonable suspicion because the anonymous tip did not specifically describe or name Sanchez, or describe his vehicle, but instead only identified the location in which the drug transaction would take place. This, however, overlooks the fact that the identification of Sanchez was made by the officer's firsthand observation of Sanchez and his actions, which were indicative of a drug transaction. Thus, the fact that the tip did not identify Sanchez is irrelevant, since the officer himself made that identification when he watched Sanchez take part in a likely drug transaction.

Given the relevant law, and the facts before his attorneys, it was objectively reasonable for the attorneys not to file a motion to suppress based on Sanchez's arguments. *See United States v. Kimbler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding that an ineffective assistance of counsel claim cannot be based on "an attorney's failure to raise a meritless argument").

2. **Search**

Sanchez contends that Arana and Fagerberg were also ineffective for not seeking to suppress the evidence seized at the stop, contending that it was the result of an illegal search of his vehicle. Sanchez first argues that because he did not consent to the search of his vehicle, the search was illegal. This is incorrect. A search of a vehicle may be based either on consent or on probable cause that the vehicle contains contraband. *United States v. Ross*, 456 U.S. 798, 809 (1982); *U.S. v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010). Lack of consent is thus not fatal to a search. Here, the officers asserted they had probable cause to search the vehicle.

The record shows that the officers in fact had probable cause to search the vehicle. An alert by a canine during a sniff of the exterior of a vehicle provides probable cause for a full search of the vehicle. *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (citing *United States v. Seals*, 987 F.2d 1102,1107 (5th Cir. 1993). Sanchez does not challenge this point. Sanchez's true complaint appears to be with the canine sniff itself. While a canine sniff of the exterior of a vehicle is not a search under the Fourth Amendment requiring probable cause, *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), the canine's entry into the vehicle, prior to alerting on the exterior of the vehicle, might constitute an impermissible search. *See United States v. Powell*, 732 F.3d 361, 373 (5th Cir. 2013) ("A canine 'sniff' test is not a 'search' for Fourth Amendment purposes and is exempt from the probable cause requirement *so long as the dog does not enter the home or vehicle*.") (emphasis added); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 885 (10th Cir. 2014) (finding that a dog's entry into the vehicle prior to establishing probable cause constituted a search); *United States v. Boston*, No. Civ.A.SA04FR0459, 2005 WL 354037, at *5 n.4 (discussing without deciding whether a dog sniff of the interior of the car would constitute a search). However, the law is not entirely

clear on this issue, with some circuits distinguishing the instinctual actions of a dog—which would not violate the Fourth Amendment—from a dog's entry into the vehicle after encouragement from its handler. *See United States v. Mostowicz*, 471 F. App'x 887, 890–91 (11th Cir. 2012) (citing cases from three other circuits to support its proposition "that a trained dog's instinctive acts [to enter the vehicle]—performed without police encouragement or facilitation—do not violate the Fourth Amendment").

Sanchez argues that the dog entered the vehicle with encouragement from his handler. Most circuits agree that these facts, if proven, might constitute an impermissible search. However, other than his own self-serving statements, there is no evidence to support Sanchez's assertion. More importantly, Sanchez swore under oath in open court that this is not what happened. The factual basis contained in his plea agreement included the following statement:

> During the traffic stop, APD K9 Officer Hamilton responded to the scene and had his dog, Raggio, walk ***around the perimeter of the Tahoe***. Officer Hamilton observed Raggio alert to the presence of narcotics in the Tahoe. Officers then searched the Tahoe and recovered from under the driver's side floor mat a plastic bag containing a large amount of what appeared to be methamphetamine.

Dkt. No. 44 at 8 (emphasis added). At the plea hearing, the following dialogue between Sanchez and the Court took place:

> THE COURT: Now, in your plea agreement there's a summary of the government -- that the government has prepared, that -- what they contend they could have proven at a trial. Have you had a chance to read through that or have that translated for you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you understand the factual summary?
>
> THE DEFENDANT: Yes.

9

> THE COURT: And is that accurate about what happened in the case and about what you did?
>
> THE DEFENDANT: Yes.

Dkt. No. 92 at 18. "[T]he representations of the defendant . . . at [a plea] hearing, as well as any finding made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, courts have held that a defendant who swears to one thing at a guilty plea hearing, and then later claims the opposite, will be considered "wholly incredible" if all he makes are "conclusory allegations unsupported by specifics." *Id.* at 74. Sanchez's sworn statement verifying the factual basis constitutes a high barrier to his later allegations that the dog entered the vehicle prior to alerting. Additionally, Arana's affidavit reiterates the facts provided in the factual basis of the guilty plea. Dkt. No. 104-3 at 2–3. Sanchez's uncorroborated, self-serving statements that are contrary to the weight of the evidence do not establish that his Fourth Amendment rights were violated.

Moreover, even were the Court to find Sanchez's statements credible, this does not end the analysis. Sanchez must also show that his attorneys were not objectively reasonable in their decision to not file a motion to suppress. A decision not to file a motion to suppress is a strategic decision, which, absent a showing that it was made without complete investigation, should remain undisturbed. *Id.* at 690–91. The weight of the evidence provided in the presentence investigation report and factual basis of the plea—including Sanchez's own statements at the plea colloquy—establish that the search was likely legal. As such, it was reasonable for the attorneys to forego a motion to suppress, which at best would have relied on a credibility determination between Sanchez and the officer on scene. This is especially true in light of the less-than-clear state of the

law, as discussed above. Additionally, as noted at the sentencing hearing, the government chose not to pursue charges for the methamphetamine found on Sanchez's co-defendant in exchange for his guilty plea. Dkt. No. 93 at 11. This would likely have been withdrawn following a motion to suppress. The attorney's decision not to file the motion would therefore reflect sound trial strategy.

**B.     Hernandez**

Finally, Sanchez argues that his third attorney, Hernandez, was ineffective for failing to object to the base offense level in the PSR, and for failing to have the drug evidence retested. Sanchez argues that the base offense level of 34 calculated by the probation office (consistent with the reported weight and purity of the drugs found on him) was incorrect, and that it should have been 30. Sanchez contends that Hernandez should have objected to the base level of 34, based on an alleged promise that the base offense level would be 30. He also contends that Hernandez should have requested the seized drugs be retested to prove that the methamphetamine was not of the high purity required to be "Ice." Neither of these arguments has merit.

First, it is clear from the record at sentencing that Hernandez did object to the base level of 34, per Sanchez's instructions. Dkt. No. 93 at 3-4, 9. The quantity and purity of the drugs found on Sanchez correlated with a base offense level of 34, as set forth in the PSR. Hernandez explained that the plea agreement never specified that the drugs found in Sanchez's car were of the purity to be "Ice", but rather describes a "mixture" including methamphetamine. *Id.* at 3-4. However, Judge Yeakel rejected this argument, agreeing with the base level recommended by the probation office. In particular, he noted:

> I am aware of those [objections], and I do note the plea agreement says 'a mixture' and I note the original indictment in this case says 'a mixture.' I am aware of what

11

> you have pleaded guilty to, I am aware of your plea agreement, and I am aware what
> you were indicted for.

Dkt. No. 93 at 4. Judge Yeakel then overruled the objection, stating that Sanchez "was fortunate that the base level offense is as low as it was," referring to the fact that Sanchez could arguably have been held responsible for the drugs found in his co-defendant's possession. *Id.* at 13. Because Hernandez in fact made the objection, and it was rejected, this argument cannot support a finding that Hernandez was ineffective. *Cronic v. United States*, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not require that counsel do what is impossible . . . .").

Second, Sanchez argues that he was denied effective assistance of counsel because Hernandez failed to have the drug evidence retested. Sanchez contends that if the methamphetamine had been retested, it would have shown that the drugs had a lower purity than claimed, which would have resulted in a lower base offense level. Dkt. No. 101 at 6. However, it was objectively reasonable for Hernandez to not request a continuance to have the drugs retested. In his affidavit, Hernandez stated that the judges "frown upon defense motions of this type after a plea agreement has been executed." Dkt No. 104-5 at 1. Further, Judge Yeakel rejected Sanchez's request for more time, stating "I find that you don't have good cause to further delay this sentencing, and I deny your request to delay the sentencing" when Sanchez began complaining about his previous attorneys and requested more time with his current counsel. Dkt. No. 93 at 5. Additionally, Hernandez states that "[t]he potential benefits of this course of action were greatly outweighed by the risk of the government withdrawing their four level reduction." Dkt. No. 104-5 at 1. This decision by counsel was sound trial strategy, and the Court will not second guess it.

Moreover, Sanchez is unable to show prejudice. Aside from his self-serving statements that the drugs could not have possibly been of the purity they showed when tested, there is no evidence to support this. Sanchez does not argue that the labs failed to follow protocols or that mistakes were made in the original testing of the drugs. While he states in his reply that he requested Hernandez to investigate the chain of command, his sole argument appears to be that "the drugs [he] had were mostly cut and of very poor quality." Dkt. No. 101 at 6. Sanchez's conclusory statements—without more—are insufficient to support a finding that Hernandez was ineffective.

## IV. RECOMMENDATION

In accordance with the preceding, the undersigned **RECOMMENDS** that the District Court **DENY** Sanchez's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 99).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant.

Sanchez is entitled to a COA only if he made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In explaining this rule as it relates to procedural rulings, the Supreme Court stated, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states

13

a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). On the other hand, in cases where a district court rejected a movant's constitutional claims on the merits, the Supreme Court concluded that "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Similarly, a movant satisfies the COA requirements by demonstrating "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Notably, this standard does not require the movant to show that an appeal will succeed. *Id.* at 337.

In this case, reasonable jurists could not debate the denial of Sanchez's motions on procedural or substantive grounds, given the nature of Sanchez's representation and the implications of his voluntary guilty plea. Accordingly, the undersigned recommends that a COA not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal

14

conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of June, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE